UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD WILLIAMS,

        Plaintiff,

v.                              CASE NO.  8:02-CV-85-T-17MAP

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY, and LANDAMERICA
FINANCIAL GROUP, INC.,

        Defendants.
_____/


                        ORDER

        This cause is before the Court on:


        Dkt. 79    Motion for Summary Judgment
        Dkt. 80    Motion for Summary Judgement
        Dkt. 81    Notice - Administrative Record
        Dkt. 82    Notice
        Dkt. 83    Response
        Dkt. 84    Response

        This ERISA case includes the following claims in the Amended
Complaint (Dkt. 8):

        Count I              Action to Recover Benefits
                             Pursuant to 29 U.S.C. Sec. 1132
                             (a)(1)(B) - Against Hartford

        Count II             Action to Clarify Right to Receive
                             Benefits Pursuant to 29 U.S.C. Sec.
                             1132 (a)(1)(B) - Against Hartford

        Count III            Action for Breach of Fiduciary
                             Duty and Other Equitable Relief
                             Pursuant to 29 U.S.C. Sec. 1132(a)(3)
                             Against Hartford

        Count IV             Action for Interference with Protected
                             Plan Benefit Pursuant to 29 U.S.C. Sec.
                             1140 Against LandAmerica

Case No. 8:02-CV-85-T-17MAP

I.  Posture of this Case

The Court will refer to the Administrative Record by citation to "H," followed by a page number.

The Court will refer to Defendant Hartford Life and Accident Insurance Company as "Hartford" and LandAmerica Financial Group as "LandAmerica".

A.  LandAmerica

Defendant LandAmerica Financial Group, Inc. commenced bankruptcy proceedings in 2008.  There is a pending Motion to Sever or Bifurcate the claim in Count IV, which will be adjudicated separately.  The Court has not been notified that the Bankruptcy Court has granted relief from the automatic stay. Therefore, the Court will not address the claim in Count IV.

B.  The Court's Prior Ruling

The Court previously denied Defendant Hartford Life and Accident Insurance Company's Motion for Summary Judgment as to coverage, and this case was remanded to the Claim Administrator. (Dkt. 58).  This case was administratively closed at that time, and the Court retained jurisdiction.  Subsequently, Defendant Hartford awarded long term disability benefits to Plaintiff Donald Williams.  Defendant Hartford paid long term disability benefits from October 19, 2000 until June 17, 2002, and terminated further long term disability benefits.  Plaintiff Williams administratively appealed the decision, and the denial of further benefits was upheld on June 30, 2008. (H101).

Plaintiff Donald Williams moved to reopen this case on July 24, 2008 (Dkt. 60), which was granted. (Dkt. 61).

In the Court's prior order, which was entered on September 28, 2006, the Court found that this case was subject to the heightened arbitrary and capricious standard of review. Since that time, there have been changes to the analytical method for determining the standard of review. Therefore, the Court will redetermine the applicable standard of review for this ERISA case.

The Court also notes that the record before the Court at the time the Court ruled on Defendant's Motion for Summary Judgment established that Plaintiff was on an unpaid, but authorized, bereavement leave from 1/03/2000 to 1/18/2000. The record now before the Court establishes that Defendant LandAmerica reported to Defendant Hartford that Plaintiff was on an unpaid leave of absence, but in fact Plaintiff Williams received regular pay for 1/1/2000-1/15/2000. (H375). Plaintiff Williams applied for FMLA leave on 1/18/2000, which was approved by Defendant LandAmerica on 1/19/2000.

II. Standard of Review

In addition to the summary judgment standard, the Eleventh Circuit Court of Appeals has established a "well-defined series of six steps" for district courts to follow in "reviewing a denial of benefits decision in an ERISA case." See Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008). The court first reviews the "plan documents to determine whether they grant the administrator discretion in making the

benefit determinations." Id.  The court then conducts an initial
de novo review to determine whether the benefits decision was
"wrong." Id at 1246-47.  The court decides whether, based on the
"record before the administrator at the time the decision was
made," the court would have reached the same conclusion as the
administrator.  Id at 1246.  In the initial de novo review, the
plaintiff "bears the burden of proving that [he] is disabled."
Id at 1247.  If the Plaintiff's burden is not met, then the
administrator's decision was not "wrong," and the court ends its
inquiry and enters summary judgment for the administrator.  Id.

    If the court concludes that the administrator's decision was
"wrong,", the court then reviews the decision under the
deferential "arbitrary and capricious standard."  See Doyle v.
Liberty Life Assur. Co. of Boston, 542 F.3d 1352, 1356 (11th Cir.
2008).  Under this standard, the court determines "whether there
was a reasonable basis for the decision, based on the facts as
known to the administrator at the time the decision was made."
Id at 1360.  As long as the decision had a reasonable basis, it
"must be upheld as not being arbitrary and capricious, even if
there is evidence that would support a contrary conclusion."  See
White v. Coca-Cola Co., 542 F.3d 848, 856 (11th Cir.
2008)(citation omitted).  If the "evidence is close," the
administrator did not abuse its discretion, and the requisite
deference compels the affirmance of the administrator's decision.
Doyle, 542 F.3d at 1363.

    Where an administrator is responsible for both deciding and
paying benefit claims, the administrator has a conflict of
interest that the court must weigh during the arbitrary and
capricious review.  Id at 1359-60.  The existence of a conflict

is "merely...a factor for the district court to take into account
when determining whether an administrator's decision was
arbitrary and capricious." Id at 1360. The administrator has no
burden of showing that self-interest did not affect its decision;
the "burden remains on the plaintiff" to show that the decision
was arbitrary and capricious. Id. Even where there is a
conflict of interest, courts still "owe deference" to the
administrator's "discretionary decisionmaking." Id at 1363. It
is not the defendant's burden to prove its decision was not
tainted by self-interest. Id at 1360 (citing Metropolitan Life
Ins. Co. v. Glenn, 128 S.Ct. 2343 (2008)(implicitly overruling
the heightened arbitrary and capricious review contained in the
sixth step of the court's analysis on review of a decision
denying ERISA benefits.)

III. Cross-Motions for Summary Judgment

    Plaintiff Donald Williams seeks entry of summary judgment on
the basis of Defendant Hartford's alleged unreasonable denial of
long term disability benefits as of June 18, 2002.    Plaintiff
Williams argues that due to an underlying conflict of interest,
Defendant Hartford ignored the opinions of Plaintiff's treating
physicians and relied solely on IMEs, who never physically
examined Plaintiff Williams.   Plaintiff Williams argues that the
denial of long term disability benefits was arbitrary and
capricious.

    Defendant Hartford seeks entry of summary judgment as to
Counts I and II on the basis that Defendant Hartford correctly
relied on the medical opinion of a well-qualified consulting
physician who reviewed Plaintiff Williams' medical records and

determined that Plaintiff's subjective complaints were not substantiated by objective medical evidence. Defendant Hartford seeks entry of judgment as to Count III as a matter of law, arguing that controlling precedent prohibits Plaintiff Williams from bringing such a claim in the same lawsuit wherein Plaintiff sues for plan benefits.

IV. Statement of Facts

    1. Policy No. GL/GLT-208162, issued to Policyholder LandAmerica Financial Group, provides:

> **Who Interprets Policy Terms and Conditions?**
>
> The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

(H1).

    2. Policy No. GL/GLT-208162 defines "total disability":

> **Total Disability or Totally Disabled** means that:
>
> (1) during the Elimination Period: and
> (2) for the next 24 months, you are prevented by:
>
> > (a) accidental bodily injury
> > (b) sickness;
> > (c) mental illness;
> > (d) substance abuse; or
> > (e) pregnancy,

from performing the essential duties of your
occupation, and as a result you are earning
less than 20% of you Pre-Disability Earnings,
unless engaged in a program of Rehabilitative
Employment approved by us.

After that, you must be so prevented from
performing the essential duties of any
occupation for which you are qualified by
education, training, or experience.

The plan does not cover, and no benefit shall
be paid for any Disability:

1. unless you are under the Regular Care of
a Physician.

(H27-H28).


3. Policy No. GL/GLT-208162 defines "essential duty":

**Essential Duty** means a duty that:

1. is substantial, not incidental;
2. is fundamental or inherent to the
occupation;
3. cannot be reasonably omitted or changed.

To be at work for the number of hours in your
regularly scheduled workweek is also an
Essential Duty.


4. Policy No. GL/GLT-208162 defines "any occupation":

**Any Occupation**, if used in this Booklet-
certificate, means an occupation:

(1) for which you are qualified by
education, training or experience;
and

> (2) that has an earnings potential
> greater than an amount equal to the
> product of your indexed Pre-
> disability Earnings and the Benefit
> Percentage.

(H23).

5.   Policy GL/GLT-208162 defines "your (own) occupation":

> **Your Own Occupation**, if used in this Booklet-
> certificate, means your occupation as it is
> recognized in the general workplace.  Your
> (own) occupation does not mean the specific
> job you are performing for a specific
> employer or at a specific location.

6.   On April 3, 1978, Plaintiff Donald Williams was hired by
Defendant LandAmerica as an Underwriting Attorney.

7.   According to Defendant LandAmerica's job description,
the basic function of an Underwriting Attorney was to provide
"legal and underwriting advice and assistance to company
officers, area legal staff, approved attorneys, agents and
customers within its jurisdiction." (H613).

8.   On October 12, 2000, Plaintiff Donald Williams applied
for long term disability benefits under the Long Term Disability
Plan, an employee welfare benefit plan governed by ERISA, 29
U.S.C. Sec. 1001 et seq.  (H604-607).

9.   Plaintiff's Claim was supported by an Attending
Physician's Statement from Robert Martinez, M.D., a neurologist.
Dr. Martinez' primary diagnosis was lumbar spondylosis and lumbar
bulging discs, along with low back pain.  (H346-347).
Plaintiff's Claim was also supported by an Attending Physician's

Statement, dated 10/26/00, from Dr. Thomas McClane, a
psychiatrist.  According to the APS, the "Nature of
illness/injury" is "Depression and anxiety when working."  The
"Dates patient is unable to work (at previous job)" include
"From: 01/00 To: Indefinitely)."   Dr. McClane indicated that
Plaintiff Williams had "mild depression" that caused "[m]oderate
impairment in occupational functioning.  Limited in performing
some occupational duties." "Probably able to work part-time in
low stress occupation."  Dr. McClane also stated: "Subjective
symptoms: (Anxiety, Bk. Pain, depressed mood, insomnia, decreased
concentration, irritability when last working, substantial
sensitivity to stress)."  (H591-593).

10.  Plaintiff Donald Williams was on an approved leave of
absence beginning on January 3, 2000 through January 18, 2000,
due to his father's death, the need to resolve issues with his
father's estate, and the care of his wife, who had a serious
medical condition.

11.  Plaintiff Williams applied for a Family Medical
Leave of Absence on January 18, 2000, which was approved on
January 19, 2000. (H506).   Plaintiff's application states the
reason for the leave was to provide home health care to
Plaintiff's wife, and to settle Plaintiff's father's estate.  The
Family Medical Leave encompassed twelve weeks, until April 19,
2000.

12.  Plaintiff Williams applied for and was granted a
twenty-six week leave of absence by Defendant LandAmerica under
LandAmerica's short term disability program, from April 20, 2000
through October 19, 2000. (H527).

13.  Plaintiff Williams applied for short term disability benefits from Defendant LandAmerica in June, 2000 (H538) and later obtained an extension of time to submit documentation of disability until September 29, 2000. (H530).  On September 21, 2000, Plaintiff provided medical records from Dr. Robert Martinez.  Defendant LandAmerica notified Plaintiff Williams of the need for further documentation on September 27, 2000. (H532). On October 18, 2000, Defendant LandAmerica granted short term disability benefits, from April 20, 2000 to October 20, 2000.

14.  Plaintiff Williams applied for long term disability benefits by submitting his application to LandAmerica in September, 2000 (H538-540) and October 12, 2000 (H604-607).  On October 16, 2000, Dr. Martinez provided an Attending Physician's Statement which states permanent disability as of 9/12/2000.

15.  Plaintiff Donald Williams applied for Social Security disability benefits on February 18, 2001 (H545-H564).  The basis of Plaintiff's claim was: 1)  low back pain, and 2) depression and sensitivity to stress (H556).  After a hearing held on May 20, 2002, at which Plaintiff testified, a favorable decision was entered by the Administrative Law Judge on September 19, 2002 (H377-H385), finding that Plaintiff Williams was entitled to a period of disability commencing on April 20, 2000.  The Administrative Law Judge found that Plaintiff Williams retained the functional capacity for less than sedentary work, and Plaintiff's mental and physical impairments rendered Plaintiff unable to perform any work on a continuing and sustained basis, that is, eight hours a day, five days a week (H383).

16. Defendant Hartford denied Plaintiff Williams' claim for long term disability benefits on March 21, 2001 due to lack of coverage. (H541).

17. On May 3, 2001, Dr. McClane sent Plaintiff Williams a letter which refers to Plaintiff Williams' appointment of 4/24/2001. Dr. McClane stated that Plaintiff Williams appeared more anxious and depressed on 4/24/01 than on 10/26/00, and further included Dr. McClane's opinion that Dr. McClane's findings in his report of 10/26/00 were valid as far back as 01/00 and were likely to extend indefinitely into the future. (H490).

18. Plaintiff Williams commenced this lawsuit on January 16, 2002. The Court determined that Defendant Hartford's decision to deny benefits due to lack of coverage was wrong, and was not reasonable. On September 28, 2006, this case was remanded to the Claim Administrator.

19. After this case was remanded to the Administrator, on December 11, 2006 Defendant Hartford approved Plaintiff Williams' claim for long term disability benefits covering October 19, 2000 through August 31, 2001. (H144). Defendant Hartford further requested the completion of a Medical History covering September 1, 2001 through December, 2006.

20. Plaintiff's Medical History, dated January 2, 2007, covering 9/1/2001 until 1/2/2007, lists the following physicians: Dr. Robert Martinez, Dr. L. Ray Alonzo, Dr. Ralph Rydell, Dr. Craig Munger, Dr. Bradley Fouraker, Dr. Richard Doyle and Dr. Paul Jones. (H318).

21.  On March 27, 2007, Defendant Hartford approved long term disability benefits to June 17, 2002. (H135-136). Defendant Hartford further requested a Claimant Questionnaire. (H135).  On May 16, 2007, Defendant Hartford again requested the Claimant Questionnaire (H129).

22.  Plaintiff Williams submitted information concerning Plaintiff's claim for long term disability benefits on April 16, 2007 and submitted additional information on May 25, 2007. (H861).  Plaintiff Williams submitted the Claimant Questionnaire which details Plaintiff Williams' own description of Plaintiff's disability (H179).

23.  Plaintiff Williams' claim was sent for peer review on July 23, 2007. (H676).  Defendant Hartford received the peer review report on August 9, 2007, and an addendum on September 24, 2007. (H671-675).  An Occupational Analysis was completed on October 2, 2007 (H670, H858-860).

24.  On October 23, 2007, Defendant Hartford notified Plaintiff Williams that an additional peer review was necessary, which addressed Plaintiff's functionality from 2002 to the present. (H122).

25.  On November 26, 2007, Defendant Hartford denied Plaintiff's claim for long term disability benefits beyond June 17, 2002. (H775-779).  Defendant Hartford relied on Policy's language, the records within the claim file considered as a whole, including the medical consultant review conducted by Dr. David B. Ross, a board-certified neurologist (H788, 870).  In his Peer Review Report, Dr. Ross states:

> I had previously spoken with Dr. Martinez and
> the opthalmologist from Brandon Eye Clinic.
> Dr. Martinez feels that Mr. Williams has an
> impairing back injury compounded by
> psychiatric issues.  The opthalmologist did
> not feel that the eye problems impaired the
> claimant." (H788).

26.  Plaintiff Williams appealed the denial of Plaintiff's
claim on May 27, 2008. (H757).  Plaintiff Williams provided the
report of Dr. Robert Martinez dated May 7, 2008.

27.  On June 5, 2008, Defendant Hartford referred
Plaintiff's claim to the Appeal Section for administrative
appeal. (H663).  During the appeal, Plaintiff's claim was
reviewed by Dr. Randall King, a board-certified neurologist, who
issued his report on June 27, 2008. (H712).  In his report, Dr.
King states Dr. King reviewed all medical records submitted to
him, did not examine Plaintiff Williams, and Dr. King's opinions
are independent of any claims decision.  Dr. King reviewed the
records of Dr. Martinez, Dr. Rydell, Dr. McClane, Dr. Aronoff,
and Dr. Fouraker. (H712-718).  Dr. King reviewed the MRI report
of 10/2/00 and the MRI report of 6/20/2002.  Dr. King discussed
this case with Dr. Martinez, and included the details of the
discussion in the report (H715).

28.  On June 30, 2008, Defendant Hartford upheld the
termination of further long term disability benefits. (H101-105,
H730-H737).   Based on documentation within the claim file and
Policy language, Defendant Hartford determined that, as of June
18, 2002, Plaintiff Williams no longer met the Policy definition
of Total Disability.

V.  Discussion

The Plan documents accord Defendant Hartford discretion in making benefit determinations.  The standard of review that applies to the decision of the Plan Administrator is "arbitrary and capricious."

In this case, Defendant Hartford denied long term disability benefits to Plaintiff Donald Williams after June 17, 2002. Plaintiff Donald Williams bears the burden of proving that, as of June 18, 2002, Plaintiff Williams was totally disabled from performing the essential duties of his own occupation, which would entitle Plaintiff to continuing benefits from Defendant Hartford.  Plaintiff Williams bears the burden of proving continued disability whether Defendant Hartford denied his claim at the start or terminated Plaintiff Williams' benefits after initially finding him disabled and paying him benefits for some time.  Hufford v. Harris Corp., 322 F.Supp.2d 1345, 1360 (M.D. Fla. 2004).

A.  Counts I and II - Was the decision of the Plan Administrator to deny long term disability benefits after June 17, 2002 "wrong?"

In considering whether the decision of the Plan Administrator to deny long term disability benefits to Plaintiff Williams after June 17, 2002 was wrong, the Court considers only the facts known to the Plan Administrator.  In this case, the facts known to the Plan Administrator are contained within the Administrative Record.

After consideration, based on the issues addressed below, the Court finds that the decision of Defendant Hartford to deny long term disability benefits after June 17, 2002 was not wrong.

It is undisputed that Dr. Martinez' diagnosed Plaintiff Williams with lumbar spondylosis and bulging discs, accompanied by chronic pain. At the time of Plaintiff Williams' initial claim for long term disability benefits, Plaintiff Williams was also diagnosed with depression. Plaintiff Williams' claim for long term disability benefits after June 17, 2002 is based on "multiple level degenerative spinal stenosis at L3-4, L4-5 with prominent stenosis bilaterally at L5-S1 level" (H179) and chronic pain caused by Plaintiff's back problems, which interferes with Plaintiff's ability to concentrate.

Plaintiff Williams was employed as an underwriting attorney. The essential duties and demands of Plaintiff's occupation correspond with the essential duties and demands of an insurance attorney within the Dictionary of Occupational Titles. (H858-H859). The General Educational Development characteristics of an insurance attorney include: Reasoning Level 6, Mathematics Level 4, Language Level 6. (H860). These characteristics indicate the following:

> Reasoning Level 6:
>
> Apply principles of logical or scientific thinking to a wide range of intellectual and practical problems. Deal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases. Deal with a variety of abstract and concrete variables. Apprehend the most abstruse of concepts.

Mathematics Level 4:

Algebra: Deal with a system of real numbers; linear, quadratic, rational, exponential, logarithmic, angle and circular functions, and inverse functions; related algebraic solution of equations and inequalities; limits and continuity, and probability and statistical inference. Geometry: Deductive axiomatic geometry, plane and solid, and rectangular coordinates. Shop Math: Practical application of fractions, percentages, ratio and proportion, measurement, logarithms, slide rule, practical algebra, geometric construction and essentials of trigonometry.

Language Level 6:

Same as Level 5.

Language Level 5:

Reading: Read literature, book and play reviews; scientific and technical journals, abstracts, financial reports, and legal documents. Writing: Write novels, plays, editorials, journals, speeches, manuals, critiques, poetry, songs. Speaking: Conversant in the theory, principles, and methods of effective and persuasive speaking, voice and diction, phonetics, and discussion and debate.

<u>See</u> Dictionary of Occupational Titles, Appendix C, General Educational Development.

Plaintiff's occupation is classified as sedentary. The Dictionary of Occupational Titles defines "sedentary":

> S-Sedentary Work-Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and

> standing are required only occasionally and
> all other sedentary criteria are met.

<u>See</u> <u>Lopes v. Metropolitan Life Ins. Co.</u>, 332 F.3d 1, 3 n.2 (1st Cir. 2003).

Plaintiff Williams' medical diagnoses and complaints of pain alone do not establish Plaintiff's entitlement to continued long term disability benefits.  <u>See</u> <u>Doyle v. Liberty Life Assur. Co. Of Boston</u>, 511 F.3d 1336, 1342 (11th Cir. 2008).  The conditions from which Plaintiff Williams suffers include medical conditions that vary in degree of severity and often do not prevent a person from working.  <u>See Barnhart v. UNUM Life Ins. Co. Of Am.</u>, 179 F.3d 583, 585-86 (8th Cir. 1999)(degenerative disc disease and cervical spondylosis); <u>Pari-Fasano v. Hartford Life and Accident Ins. Co.</u>, 230 F.3d 414, 417 (1st Cir. 2000)(cervical disc disease).

It is undisputed that Plaintiff Williams has a back condition which causes some pain, and that Plaintiff has been treated from 1997 to 2008 for chronic back pain.  There is objective medical evidence within the Administrative Record which supports Plaintiff Williams' claim that Plaintiff Williams suffers from chronic pain of long-standing duration.  There is also substantial evidence within the Administrative Record that establishes discrepancies between Plaintiff Williams' actual functional abilities and the functional abilities that Plaintiff Williams reported to his treating physicians.

1.    Depression, Anxiety, Sensitivity to Stress

The Court notes Plaintiff Williams was awarded Social Security disability benefits in September, 2002, for a disability commencing in April, 2000.  The Court may consider the award of Social Security benefits in its review of the decision of the Plan Administrator.  Kirwan v. Marriott Corp., 10 F.3d 784 (11th Cir. 1994).  The adjudication of a Social Security disability claim requires that deference be accorded to the opinions of the claimant's treating physicians.  In determining a disability claim under an ERISA plan, the claim administrator may not arbitrarily refuse to credit reliable evidence, but is not required to accord deference to the opinions of treating physicians.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

Plaintiff Williams applied for long term disability benefits based on severe chronic pain, as well as depression and sensitivity to stress.  The last record of Plaintiff's treatment for depression by Dr. McClane in the Administrative Record before this Court is the medical record dated May 3, 2001.  The Court examined the Administrative Record to find some record of continuing treatment in the form of therapy and/or antidepressant medication, but did not find such records.  During the administrative appeal, Plaintiff Williams provided only an additional medical record from Dr. Martinez.

The Court notes that Plaintiff Williams sought and obtained Social Security disability on the basis of chronic pain, which interfered with Plaintiff's ability to concentrate, and depression and sensitivity to stress, which also interfered with

Plaintiff's ability to concentrate.  The decision awarding Social
Security disability benefits to Plaintiff Williams relies on the
medical records of Dr. Thomas McClane, including a letter from
Dr. McClane dated April, 2002, as well as other records (H382).
The Administrative Law Judge evaluated Plaintiff's depression and
anxiety disorder under sections 12.04 and 12.06 of the [L]istings
[of Impairments], and found that Plaintiff Williams suffered from
moderate restrictions in activities of daily living, and moderate
limitations in social functioning.  The ALJ noted the presence of
"Marked difficulties sustaining concentration."  The ALJ found no
evidence of any episodes of decompensation or C criteria.  The
ALJ found that "the claimant's mental and physical impairments
rendered him unable to perform any work on a continuing and
sustained basis that is, eight hours a day five days a week."

    In his application for Social Security disability benefits,
Plaintiff Williams stated that he had difficulties completing his
work duties, indirectly stating a deficiency in pace or
persistence.  Plaintiff Williams also referred to impaired
concentration, and sensitivity to stress, which interfered with
Plaintiff's ability to work. (H545-564).

    A deficiency of pace or persistence, impaired concentration
and inability to tolerate stress are discrete problems that may
affect a claimant's functional capacity.  A claimant who suffers
from a mental disorder may have an increased susceptibility to
stress.  However,  "stress" is not a characteristic of any job,
but refers to a person's subjective response to a particular
situation.  Lancellotta v. Secretary of Health and Human

<u>Services</u>, 806 F.2d 284 (1st Cir. 1986)(citing SSR 85-15 and 85-16, determining whether impaired person can adapt to workplace is difficult and requires thorough individual evaluation).

Each Listing of Impairment for mental illness contains two parts: one to medically substantiate the presence of a mental disorder, and one to describe the functional limitations associated with mental disorders.  The functional limitations for all Listings require that a claimant's condition meet two of the four listed functional limitations: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner...or 4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience the exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).  <u>See</u> 20 C.F.R. Part 404 Subpart P, Appx. 1.

In adjudicating Plaintiff's Social Security claim, the ALJ relied on the medical reports of Dr. Thomas McClane, which diagnosed Plaintiff with depression and anxiety:

> Reports from Dr. Thomas McClane diagnose the
> claimant with depression and anxiety.  Mood
> was depressed.  The claimant's back problems,
> along with his being the primary caretaker
> for his ill wife, was causing emotional
> deterioration.  Dr. McClane recommended that
> the claimant not return to his past work
> because it would likely cause further

> emotional deterioration.  Dr. McClane drafted
> a letter in April 2002 and indicated that the
> claimant's depression and anxiety had
> increased because of the claimant's increased
> struggle with his physical problems.
> Medications included Darvon and Celexa.
> Impaired concentration, sensitivity to
> stress, and moderately severe anxiety were
> noted (Exhibits 6F, 11F).

(H382).

At the request of Defendant Hartford, Plaintiff Williams completed a Medical History form covering September 1, 2001 through December, 2006 but the Medical History form does not include Plaintiff's continued treatment with Dr. McClane or any reference to prescription medications taken by Plaintiff Williams during that time (H318).  The last record from Dr. McClane is the letter of May 3, 2001, which includes Dr. McClane's opinion that his previous findings would remain valid indefinitely. (H490).

The "Claimant Questionnaire" submitted by Plaintiff does not include any reference to continuing depression, anxiety or sensitivity to stress.  Plaintiff Williams discusses only Plaintiff's pain, which interferes with Plaintiff's ability to concentrate.  Plaintiff Williams describes severe pain which interferes with Plaintiff's ability to complete tasks, except at a slow pace and in short segments. (H179).

Dr. McClane's opinion in 2002 that a return to work would probably cause Plaintiff Williams' emotional condition to deteriorate is a medical finding.  The Plan Administrator may discount the opinion of a claimant's treating physician that is not supported by reliable evidence.

Plaintiff Williams provided no documentation that Plaintiff Williams continued treatment for depression, anxiety or sensitivity to stress after April, 2001, or continued to take prescription medication for a continuing mental disorder after that time. Depression and anxiety are not disorders which inevitably remain constant. There was no record of treatment for depression/anxiety on a regular basis during 2001 and 2002, such as monthly appointments or refilled prescriptions. The absence of continuing treatment in the form of doctor visits and/or prescription medication justifies a conclusion that Plaintiff Williams no longer needed treatment for any mental disorder because the symptoms abated. The absence of symptoms of depression or anxiety justifies a conclusion that Plaintiff's alleged inability to tolerate stress also abated. The Plan Administrator properly considers all facts before the Administrator in its claim determination. The Administrative Record establishes that there are differences between Plaintiff's claim for Social Security benefits and Plaintiff's claim for long term disability benefits covering the same time frame.

The notification letter from Defendant Hartford to Plaintiff indicates the records which Defendant Hartford considered in the determination of Plaintiff Williams' claim for long term disability benefits, both initially and on administrative appeal. Plaintiff Williams had the opportunity to submit additional evidence after the initial denial, but the only additional evidence submitted at the time of the appeal was an additional report from Dr. Martinez, who is a neurologist, not a psychiatrist.

2.   Chronic Back Pain

The Court notes that Dr. David Ross, a medical reviewer, spoke with Dr. Robert Martinez on July 23, 2007, and Dr. Ross' report includes Dr. Martinez' discussion with Dr. Ross that Plaintiff Williams "has two major problems: his chronic low back pain and his psychiatric-social issues," and is permanently and totally disabled.   When Dr. Martinez excluded psychiatric factors, Dr. Martinez' opinion did not change; Dr. Martinez felt that Plaintiff's low back problems were impairing of themselves. (H159).

The Court notes that Dr. Randall King also spoke with Dr. Robert Martinez.  In his report dated June 27, 2008 (H712-H718), Dr. King states:

> "I asked if his belief that Mr. Williams was
> incapable of working was based on his MRI and
> neurologic findings, or primarily based upon
> his self-reporting of pain.  Dr. Martinez
> stated that his recommendation that he
> [Williams] was totally disabled was mostly
> based on his subjective reporting of pain,
> although he had some mild neurologic and MRI
> findings.  I asked if with limitations he
> would be capable of working at a light or
> sedentary job.  Dr. Martinez responded that
> because of his subjective pain, he did not
> believe he would be capable of working."

(H715-716).

As to Plaintiff's functional limitations, Dr. King concluded that from June 17, 2002, Plaintiff had some mild neurologic findings and some mild MRI findings that would make working at a light level difficult.  However, from 6/17/2002 and beyond,

Plaintiff would have been capable of working at a sedentary
level.

As to Plaintiff Williams' report of severe pain, Dr. King
states that Plaintiff's visits with Dr. Rydell and Dr. Martinez
have not been on a consistent basis.  The Court understands this
to mean that Plaintiff Williams did not have appointments for
further treatment on some periodic basis.  After Plaintiff
elected conservative treatment, the absence of regular treatment
by Dr. Rydell, a surgeon, is to be expected.  As to treatment by
Dr. Martinez, the Plan Administrator is entitled to consider the
opinion of a claimant's treating physician in light of all the
facts known to the Plan Administrator.  When a Plan requires
regular care by a physician, it is relevant to a benefit decision
that a claimant is seldom treated by his primary treating
physician.

Dr. King also states that there is no pain consultation
documented or visits with a pain specialist.  Dr. King notes
that, "in general, when the pain component is overwhelming, there
are usually numerous pain visits and visits with practitioners
about pain.  The lack of significant documentation of visits for
pain argues against a significant pain component." (H717).

Intractable and unpredictable severe chronic pain is a
problem that requires management.  Dr. King's opinion as to the
absence of treatment by a pain management specialist was properly
considered by Plan Administrator.

As to prescription medication, based on the discussion with
Dr. Martinez and the information provided to him, Dr. King states

that there is no issue with narcotics, or any other limiting
medications.  Dr. King states that the recent report from Dr.
Martinez listed only aspirin and Celebrex, which would not cause
any significant limitation from side effects.  Dr. King concluded
that Plaintiff's functional capacity was not limited by
medication.  (H717-718).

The Administrative Record supports Dr. King's conclusion
that Plaintiff's functional capacity was not limited by the
effects of prescription medication as of June 17, 2002.
Plaintiff has made arguments which explain the absence of any
record of prescription medication for pain; however, the argument
of counsel is not evidence, and was not within the Administrative
Record.

In this case, the treating physician's opinion differs from
the opinion of physicians who performed a medical review.
Plaintiff's medical records were independently reviewed by two
board-certified neurologists.  An ERISA Plan Administrator is
entitled to rely on the opinion of a qualified consultant who
neither treats nor examines the claimant.  Hufford v. Harris
Corp., 322 F.Supp.2d 1345, 1359 (M.D. Fla. 2004).  Defendant
Hartford was "not wrong" in relying on the professional
assessments of Dr. Ross and Dr. King in Defendant's decision to
deny long term disability benefits after 6/17/2002.  See Giertz-
Richardson v. Hartford Life and Accident Ins. Co., 536 F.Supp.2d
1280, 1291 (M.D. Fla. 2008).

3.  Full and Fair Review

The Court notes that Defendant Hartford provided the reports

25

on which Defendant Hartford relied in its final decision to
Plaintiff. Defendant Hartford considered the additional
information submitted by Plaintiff at various times during the
claim process. The Court has examined the claim process, and
notes that both Plaintiff and Defendant found it necessary to
seek additional time to obtain and review records. The Court
further notes that the medical reviewers independently considered
all the medical records from Plaintiff's treating physicians, and
both reviewers spoke with Dr. Robert Martinez. The reports of
the medical reviewers plainly consider the medical records of
Plaintiff's treating physicians, and explain why the medical
reviewers reach a different conclusion than Plaintiff's treating
physicians.

4. Conflict of Interest

     Defendant Hartford determines claims and pays benefits from
its own assets. If the Court determines, after <u>de novo</u> review,
that the decision of the Plan Administrator is wrong, the Court
must determine whether the decision is nonetheless reasonable.
The presence of a conflict of interest is one factor which the
Court considers when reviewing the decision to determine if the
decision is arbitrary and capricious.

     In this case, the Court has determined that the decision of
the Plan Administrator was not wrong, and it is not necessary for
the Court to determine whether the decision was wrong but
reasonable. The Court recognizes that some of the concerns
present in <u>Metropolitan Insurance Co. v. Glenn</u>, 128 S.Ct. 2343
(2008) are present in this case. Under the terms of the plan,
Plaintiff Williams was required to seek Social Security

disability benefits. The Court notes only that the Court is not aware of any evidence of the payment of improper financial incentives, of a pattern or practice of unreasonably denying meritorious claims, of reliable evidence that was disregarded, or of the production of only selective medical evidence.

B. Count III

Where an ERISA plaintiff has an adequate remedy under 29 U.S.C. Sec. 1132(a)(1)(b), an ERISA plaintiff cannot alternatively plead and proceed under 29 U.S.C. Sec. 1132(a)(3). See Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1088 (11th Cir. 1999)(affirming dismissal where plaintiff sought benefits under Sec. 1132(1)(1)(b)); Jones v. American General Life and Accident Insurance Co., 370 F.3d 1065 (11th Cir. 2004). The Court grants Defendant's Motion for Summary Judgment as a matter of law as to Count III of the Amended Complaint.

After consideration of all the facts known to Defendant Hartford, the Court concludes that the decision of Defendant Hartford to deny long term disability benefits to Plaintiff Donald Williams as of June 17, 2002 was not wrong. The Court grants Defendant's Motion for Summary Judgment as to Count I, Count II and Count III of the Amended Complaint, and denies Plaintiff's Motion for Summary Judgment. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **granted** as to Count I, Count II and Count III. Plaintiff's Motion for Summary Judgment is **denied**. There being no just reason for delay, the Clerk of Court shall enter a final judgment in favor of Defendant Hartford Life and Accident Insurance

Case No. 8:02-CV-85-T-17MAP

Company and against Plaintiff Donald Williams as to Counts I, II and III of the Amended Complaint.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 12th day of February, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record